## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SCOTT ALAN STONE,

      Plaintiff,

v.

ANTONY BLINKEN, RENA BITTER,
and MARC D. DILLARD,

      Defendants.

_____/

Case No. 2:23-cv-12181
Hon. Brandy R. McMillion
Mag. Judge Anthony P. Patti

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION TO DISMISS (ECF No. 9)

Before the Court is a Motion to Dismiss (ECF No. 9) filed by Defendants Antony Blinken, Rena Bitter, and Marc D. Dillard ("Defendants").[1]  They seek dismissal of Plaintiff Scott Alan Stone's Petition for Writ of Mandamus and Complaint for Injunctive Relief ("the Petition") (ECF No. 1).  Having reviewed the parties' briefs, the Court finds oral argument unnecessary.  *See* E.D. Mich. LR 7.1(f).  Because Plaintiff has not alleged sufficient facts to establish the delay in processing his noncitizen wife's visa application was unreasonable, the Court **GRANTS** Defendants' Motion to Dismiss.

---

[1] Antony Blinken is the Secretary of the U.S. Department of State, Rena Bitter is the Assistant Secretary, Bureau of Consular Affairs of the U.S. Department of State, and Marc Dillard is the Deputy Chief of Mission of the U.S. Embassy in Kenya.  ECF No. 1, PageID.1.

1

**I.**

Under the Immigration and Nationality Act ("INA"), individuals can seek entry to the United States if they are an "immediate relative" of a U.S. citizen. *See Hussein v. Beecroft*, 782 F. App'x 437, 439 (6th Cir. 2019) (citing 8 U.S.C. § 1151(b)(2)(A)(*i*)). To start the process, the U.S. citizen files a "Petition for Alien Relative," with the United States Citizenship and Immigration Services ("USCIS") of the Department of Homeland Security. *Id.* Also called an "I-130 Form," the petition allows the U.S. citizen to seek "immediate relative" status for their non-citizen spouse. *Id.* (quoting 8 U.S.C. § 1154(a)(1)(A)(*i*)); *see* 8 C.F.R. § 204.1(a)(1). Once a petition is filed, USCIS initiates an investigation of the facts in the petition. *Ahmed v. Miller*, No. 19-11138, 2020 WL 3250214, *3 (E.D. Mich. June 16, 2020).

If approved, USCIS forwards the petition to the State Department's National Visa Center ("NVC"), and the beneficiary then fills out a visa application, also called a DS-260. *See Akhter v. Blinken*, No. 23-1374, 2024 WL 1173905, *1 (S.D. Ohio Mar. 19, 2024) (citation omitted). The NVC then works with the noncitizen beneficiary to obtain required paperwork and fees, and, once those are collected, the NVC marks the applicant as "documentarily qualified." *Id.* (citing 22 C.F.R. § 40.1(h)). Documentarily qualified applicants can then apply for an immigrant visa. *Id.* (quoting 22 C.F.R. § 40.1(h)). This requires "personally appearing before a consular officer" for an interview. *Id.* (quoting 22 C.F.R. § 40.1(*l*)).

2

After obtaining documentarily qualified status, and the relevant U.S. Embassy has interview availability, the NVC schedules the applicant for a visa interview. *Akhter*, 2024 WL 1173905 at *2 (citation omitted). Each visa application is "reviewed and adjudicated by a consular officer," who "must either issue or refuse the visa" once the application is properly completed and executed before the officer. *Id.* (quoting 8 U.S.C. § 1202(b) and 28 C.F.R. § 42.81(a)). That said, the INA limits the number of family-preference visas that may be issued each year for each "family-preference categor[y] . . . ." *Id.* The Foreign Affairs Manual further indicates that interviews are "generally scheduled in the chronological order of the documentarily complete applicants." 9 FAM 504.1-2(d)(1); *see Akhter*, 2024 WL 1173905 at *2 (citing 9 FAM 504.1-2(d)(1)).

Plaintiff is a United States citizen from Brighton, Michigan. ECF No. 1, PageID.2, ¶ 1. His wife, Janeann Angara Stone, and their young son, KPS (a U.S. citizen), live in Kenya. *Id.* at PageID.4, ¶ 12. In August 2021, seeking to obtain lawful permanent resident status for Janeann, and to have her join him in the U.S., Plaintiff filed a visa petition with USCIS on Janeann's behalf. *Id.* at PageID.3, 5-6, ¶¶ 6, 18, 20. In January 2023, USCIS approved the petition. *Id.* at PageID.3, 5, ¶¶ 7, 19. And in February 2023, the NVC informed Plaintiff that his case was "'Documentarily Qualified.'" *Id.* at PageID.6, ¶ 21. This meant that "all necessary documents had been submitted" and "that the visa application is pending to be

3

scheduled for an interview." *Id.* Plaintiff is unclear on what steps Defendants have taken on his wife's visa application, but, by all accounts, the application remains pending despite the approval of her petition.[2] *Id.* at PageID.3, 6, ¶¶ 7-8, 21-23.

The failure to process Janeann's visa application has put an "indefinite hold" on reunification of this family. ECF No. 1, PageID.3, ¶ 10. The couple has been separated since 2021, causing "significant personal, financial, and emotional hardship." *Id.* at PageID.4, ¶ 11. These hardships include: he and his parents missing the chance to spend time with KPS; missing quality time with his wife and not having her around to help him care for his elderly parents; depriving his wife of "many work opportunities"; and costing him thousands of dollars in travel and support. *Id.* at PageID.4-5, ¶¶ 11-14.

Looking to compel Defendants to act on the application, Plaintiff filed the Petition in late August 2023. ECF No. 1. He raises three claims: one under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), for unreasonable delay; one seeking a writ of mandamus compelling Defendants to process Janeann's application; and one for violating his substantive and procedural due process rights under the Fifth Amendment of the U.S. Constitution. *Id.* at PageID.6-9. Among

---

[2] According to the NVC's website (referenced in Defendants' Motion), Janeann's application remains, as of the date of this Order, at the same stage as mentioned in Defendants' Motion ("At NVC").

other things, Plaintiff asks the Court to enter an order requiring Defendants to process his wife's visa application.  *Id.* at PageID.9, ¶ 9(b).

Defendants moved to dismiss (ECF No. 9) and Plaintiff responded (ECF No. 11).  Defendants did not file a reply.

On April 2, 2024, this case was reassigned from the Honorable Terrence G. Berg to the undersigned.  Prior to reassignment, Judge Berg gave notice that this motion would be decided without oral argument.  ECF No. 10.  Having reviewed the parties' briefing, this Court also finds that oral argument is unnecessary and will decide the motion based on the record before it.  *See* E.D. Mich. LR 7.1(f).

## II.

Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (b)(6).  A motion under 12(b)(1) challenges a court's subject-matter jurisdiction over claims presented.  Fed. R. Civ. P. 12(b)(1).  Such a motion attacks jurisdiction either facially or factually.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Defendants' challenge to the Court's subject-matter jurisdiction relates to its mandamus argument and does so as a facial attack.  A facial challenge requires the Court to accept as true the allegations in the pleadings and to construe them in the light most favorable to the nonmoving party.  *Id.*

In reviewing a 12(b)(6) motion, the Court "accept[s] all of the complaint's factual allegations as true and determine[s] whether these facts sufficiently state a

plausible claim for relief." *Fouts v. Warren City Council*, 97 F.4th 459, 464 (6th Cir. 2024) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).   Facial plausibility requires a plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).   "[T]he presumption of truth" applicable to factual allegations "is inapplicable to legal conclusions." *Fisher v. Perron*, 30 F.4th 289, 294 (6th Cir. 2022).

## III.

### A. Administrative Procedure Act

Defendants first argue that the Court should dismiss Plaintiff's claim under the APA because he cannot establish an unreasonable delay in adjudicating his wife's visa application.  The Court agrees.

### 1.  Applicable Law

The APA states that "within a reasonable time, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  The APA also allows courts to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1); *see also* § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.").  "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency

6

action that it is required to take." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis omitted).

Claims of unreasonable delay are "necessarily fact dependent" and "should not typically be resolved" at the motion-to-dismiss stage. *Barrios Garcia v. U.S. Dept' of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022) (quotation marks and citation omitted); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court."). But when evaluating the reasonableness of agency delay, courts look to the six factors from *Telecomm. Rsch. and Action Ctr. v. Fed. Commc'n Comm'n*, 750 F.2d 70 (D.C. Cir. 1984) (*TRAC*):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 80 (internal quotation marks and citations omitted); *see also Barrios Garcia*, 25 F.4th at 451-52 (applying *TRAC* factors to a motion to dismiss in the context of U-visas for victims of criminal activity cooperating with law enforcement and qualifying family members).

> These factors can be grouped into four basic questions:
>
> First, is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)? Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)? Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

*Rahman v. Blinken*, No. 22-2732, 2023 WL 196428, *4 (D.D.C. Jan. 17, 2023).

Though not "ironclad," the *TRAC* factors are meant to guide courts in assessing claims of agency delay. *TRAC*, 750 F.2d at 80. Each case's "unique circumstances" must be examined because each case "will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984).

To begin, Plaintiff asserts it is not appropriate to consider the *TRAC* factors at the motion-to-dismiss stage. The Court disagrees.

As a judge in this district recently found, courts at the motion-to-dismiss stage are "not determining whether there has been an unreasonable delay; rather [they are]

determining whether [the] plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Yafai v. U.S. Dep't of State*, No. 23-13199, 2024 WL 2806948, *4 (E.D. Mich. May 31, 2024) (quoting *Mottahedan v. Oudkirk*, No. 23-3486, 2024 WL 124750, *3 (D.D.C. Jan. 11, 2024)); *see Janay v. Blinken*, ___ F. Supp. 3d ___, ___, 2024 WL 3432379, *11 (D.D.C. 2024). The Sixth Circuit recently applied the *TRAC* factors in *Barrios Garcia* when it evaluated a motion to dismiss in the context of U-visas. *See Barrios Garcia*, 25 F.4th 451-55. Because the question at this stage is ultimately whether Plaintiff has alleged facts sufficient to state a plausible claim for unreasonable administrative delay, the Court applies the *TRAC* factors here, too. *See Yafai*, 2024 WL 2806948 at *4.

### 2. Application of the *TRAC* Factors

#### a. Factors One and Two

The first *TRAC* factor is typically considered alongside the second. *See Arab v. Blinken*, 600 F. Supp. 3d 59, 69 (D.D.C. 2022). Together, these two factors "get at whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Science in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). In other words, they consider whether there is "any rhyme or reason—congressionally

prescribed or otherwise—for [the] agency's delay . . . ." *Janay*, ___ F. Supp. 3d at ___, 2024 WL 3432379 at *11.

The first *TRAC* factor is generally considered the "most important" factor. *Telukunta v. Mayorkas*, No. 21-10372, 2021 WL 2434128, *2 (E.D. Mich. June 15, 2021); *In re Core Comms., Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). This factor strongly supports Defendants here because the State Department processes visa applications on a "first-in, first-out" basis. ECF No. 9, PageID.55; *see* 9 FAM 504.1-2(d)(1); *Akhter*, 2024 WL 1173905 at *2. Courts have routinely found this system of adjudication to qualify as a "rule of reason" under the first *TRAC* factor. *See Telukunta*, 2021 WL 2434128 at *2. And Plaintiff has not otherwise alleged that Defendants do not follow the "first-in, first-out" process. *See Barrios Garcia*, 25 F.4th at 453 (concluding that the plaintiff had "adequately alleged that no rule of reason governs the U-visa adjudication process" where there were allegations that "many U-visa applications were filed after but decided before theirs"). This factor therefore favors Defendants.

The second factor also favors Defendants. "[T]here is no statutory or regulatory framework within which the Department of State must adjudicate I-130 applications," so courts look to case law for guidance. *Janay*, ___ F. Supp. 3d at ___, 2024 WL 3432379, *11 (D.D.C. July 16, 2024). And here, that case law strongly favors Defendants. In *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C.

10

2020), the district court in D.C. noted the general recognition that "immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." This is consistent with decisions in this district. *See, e.g., Yafai*, 2024 WL 2806948 at *5 (finding reasonable a delay of three years since visa application and one year since the submission of another required form in the context of an I-130 petition). Plaintiff filed his I-130 petition in August 2021, nearly three years ago, and it was approved in January 2023, a year-and-a-half ago. ECF No. 1, PageID.3, 5, ¶¶ 6, 19. That is within the range of reasonableness. *See Yafai*, 2024 WL 2806948 at *5; *Janay*, ___ F. Supp. 3d at ___, 2024 WL 3432379 at *11 (compiling cases finding delays between 13 months and 30 months in adjudicating I-130 cases to be reasonable).

Plaintiff recognizes that there is "no set deadline for immigrant visa adjudications," but contends that 8 U.S.C. § 1571(b) shows that Congress had in mind a general timeframe for adjudicating visa applications. ECF No. 11, PageID.90. That provision states: "It is the sense of Congress that the processing of an immigration benefit application *should* be completed not later than 180 days after the initial filing of the application . . . ." *Id.* (emphasis added). Though 8 U.S.C. § 1571(b) expresses Congress's "sense" that "immigration-benefit applications should be adjudicated within six months," *Barrios Garcia*, 25 F.4th at 454, the plain language of the statute lacks mandatory language and therefore cannot be interpreted

11

as a legal requirement. *See Telukunta*, 2021 WL 2434128 at *2 (citing *Thakkar v. United States*, 389 F. Supp. 3d 160, 178 (D. Mass. 2019), and *Ryan v. Dedvukaj*, No. 09-14178, 2009 WL 3809813, *1-2 (E.D. Mich. Nov. 13, 2009)).

### b. Factors Three and Five

The third and fifth *TRAC* factors favor Plaintiff, though only slightly more than Defendants. These two factors concern health, welfare, and prejudice, *see Barrios Garcia*, 25 F.4th at 452; *TRAC*, 750 F.2d at 80, and "consider the effects of delay," *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020). Analysis of the third and fifth factors often overlaps. *Martin v. O'Rourke*, 891 F.3d 1338, 1346-47 (Fed. Cir. 2018) (collecting cases).

On balance, the third and fifth factors slightly favor Plaintiff. Plaintiff alleges that the delay in processing his wife's visa application has put an "indefinite hold" on the couple reuniting. ECF No. 1, PageID.3, ¶ 10. They have been separated since 2021, which, he alleges, has caused "significant personal, financial, and emotional hardship" for he and his family. *Id.* at PageID.4, ¶ 11. Plaintiff and his parents have missed the chance to spend time with KPS, and he has missed quality time with his wife and not having her around to help him care for his elderly parents. *Id.* The delay has also deprived his wife of "many work opportunities," and cost him thousands of dollars in travel and support. *Id.* at PageID.4-5, ¶¶ 12-14.

To be sure, Plaintiff has "pleaded sufficient facts to show that [his] interests are weighty, implicate health and welfare, and are harmed by" the delay in adjudicating his wife's visa application. *Barrios Garcia*, 25 F.4th at 452; *see also Yafai*, 2024 WL 2806948 at *5 (weighing the third and fifth factors in favor of the plaintiff and recognizing others courts did the same "when delays force them to postpone their lives together as married couples"); *Rashidian v. Garland*, No. 23-1187, 2024 WL 1076810, *9 (D.D.C. Mar. 8, 2024) (finding that third and fifth factors "at least arguably tilt[ed] in [the] Plaintiffs' favor" where they alleged "concrete injuries to their educational, familial, financial and professional interests caused by [the] Defendants' delay.").

However, as Defendants point out, although Plaintiff and Janeann have "an interest in prompt adjudication, so too do many others facing similar circumstances." *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021); *see Rashidian*, 2024 WL 1076810 at *9 (concluding that the plaintiffs' injuries to "educational, familial, financial, and professional interests" caused by delay were "likely shared by 'many others facing similar circumstances'" and "not so extreme or unusual as to plausibly outweigh the other factors favoring [the] Defendants."). The Court agrees with this sentiment. Plus, the delay was caused at least in part by the COVID-19 pandemic, which required suspension of visa activities in the interest of public health. *See Shen v. Pompeo*, No. 20-1263, 2021 WL 1246025, *8 (D.D.C. Mar. 24, 2021).

On balance, the third and fifth factors tilt slightly in favor of Plaintiff. The hardships he and his family have experienced from the delay in processing his wife's visa application are real, but others similarly situated face those same concerns. And the State Department found it necessary to delay visa processing to address concerns during the pandemic. Therefore, these factors do not greatly outweigh Defendants' position.

### c. Factor Four

Courts typically afford "great weight" to the fourth factor, which considers the effect the relief requested would have on other agency activities of a similar or higher priority. *See Arab*, 600 F. Supp. 3d at 71 (citing *Mashpee*, 336 F.3d at 1100); *TRAC*, 750 F.2d at 80. Here, this factor strongly favors Defendants because granting Plaintiff his requested relief would "undermine the intuitive fairness of the 'first-in, first-out' system." *Telukunta*, 2021 WL 2434128 at *3 (involving application to extend nonimmigrant status and for employment authorization with Forms I-539 and I-765).

Defendants note the "significant backlog" of visa applicants with interviews pending, caused, at least in part, by the COVID-19 pandemic. ECF No. 9, PageID.49, 62. In September 2023, that number was 312,018. *Id.* at PageID.49. As of June 30, 2024, there were 448,285 interview-ready visa applicants. Immigrant Visa Interview-Ready Backlog Report, U.S. Department of State – Bureau of

Consular Affairs, https://perma.cc/KU8G-LZ9M.  That number dropped to 394,835 after 53,450 documentarily-complete immigrant visa applicants were scheduled for July 2024 interviews.  *Id.*  Pandemic-related delays and the sheer volume of applicants have undoubtedly contributed to the slow pace at which Janeann's visa application (and scheduling her interview) has proceeded.  But it does not mean that her application should be prioritized over others ahead of her, especially when there would be no net gain.  *See Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) ("Relief that would simply reorder a queue of applicants seeking adjudication is generally viewed as inappropriate when no net gain in such adjudications is achieved.") (quotation marks and citations omitted).  The fourth *TRAC* factor therefore favors Defendants.  *See Yafai*, 2024 WL 2806948 at *5 (finding the fourth factor to favor the government because "a judicial order putting a plaintiff's application at the head of the queue would move all others back one space and produce no net gain") (cleaned up).

### d.  Factor Six

The sixth and final factor also favors Defendants.  Beyond allegations that no steps have been taken on the visa application and conclusory assertions of unreasonable delay, there are no allegations of impropriety or bad faith on the State Department's part.  *See Yafai*, 2024 WL 2806948 at *5 (finding fifth factor to favor the government where "there [was] no allegation of bad faith in the Complaint.").

15

Though he argues this factor favors him "by implication" because he alleged a "factual delay of almost a year" without "reasonable justification," ECF No. 11, PageID.92-93, the reasonableness of a delay "cannot be decided in the abstract" simply by referencing "some number of months or years beyond which agency inaction is presumed to be unlawful . . . ." *Mashpee*, 336 F.3d at 1102.

Plaintiff further argues that he "need not allege any impropriety or wrongdoing" and it is for the Court to determine "what role institutional lassitude has played in the delay," something it cannot do because there is "no evidence on which to make this evaluation without discovery." *Id.* at PageID.93. But speculation that discovery may reveal some impropriety or wrongdoing that contributed to the delay is not enough to survive a motion to dismiss. *See Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 16 (D.D.C. 2022). Nor does there appear to be any other basis for finding any "lurking" impropriety, especially given the effect of the COVID-19 pandemic on application processing. *See* ECF No. 9, PageID.62. Indeed, "the good faith of [an] agency in addressing [a] delay" may "weigh[] against relief." *Tate*, 513 F. Supp. 3d at 150 (quotation marks and citations omitted).

Two of the factors favor Plaintiff (but only slightly) while four factors favor the Defendants. The Court therefore finds it appropriate to dismiss Plaintiff's APA claim alleging unreasonable delay.

**B.     Mandamus**

Mandamus is a "drastic" remedy "to be invoked only in extraordinary situations." *Carson v. U.S. Off. of Special Couns.*, 633 F.3d 487, 491 (6th Cir. 2011) (quotation marks citation omitted).  For a writ to issue, a plaintiff must have a "clear right to relief," the defendant must have a "clear duty to act," and there may be "no other adequate remedy available to the plaintiff."  *Id.* (quotation marks and citations omitted).  "When a petitioner seeks both mandamus relief and relief under the APA, courts apply the same principles and standards both to determine jurisdiction and to assess the merits." *Nelson v. United States*, 107 F. App'x 469, 471 (6th Cir. 2004); *see Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) ("Because mandamus relief and relief under the APA are in essence the same, when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, we may elect to analyze the APA claim only.") (quotation marks and citations omitted).

Plaintiff has an adequate remedy under the APA if he could establish an unreasonable delay, but, on the facts alleged, he cannot.  The Court thus lacks subject-matter jurisdiction over Plaintiff's request for mandamus.

**C. Due Process**

Finally, Defendants asks the Court to dismiss Plaintiff's due process claim because citizens do not have a constitutional right to have their noncitizen spouse enter or remain in the country.  *Id.* at PageID.65.  The Court agrees.

17

Plaintiff says he has an "inherent right to have U.S. laws enforced" and an "implied fundamental right to family unity" under the Due Process Clause of the Fifth Amendment.   ECF No. 11, PageID.95-96.   First, aside from quoting the language of the Due Process Clause, Plaintiff presents no authority supporting the proposition that he has an "inherent right" in laws being enforced.   Second, the Supreme Court recently held that "a citizen does not have a fundamental liberty interest in [their] noncitizen spouse being admitted to the country."   *Dep't of State v. Munoz*, 114 S. Ct. 1812, 1821 (2024); *see also Baaghil v. Miller*, 1 F.4th 427, 433 (6th Cir. 2021) (holding the same).   The Court therefore grants Defendants' Motion to Dismiss Plaintiff's due process claim.

## IV.

Plaintiff's APA claims are dismissed because he fails to allege sufficient facts establishing an unreasonable delay in adjudicating his noncitizen wife's visa application.   Additionally, his request for mandamus relief is dismissed because he has an adequate remedy at law under the Administrative Procedure Act.   Lastly, the Court dismisses his due process claims because he does not have a fundamental liberty interest in having his spouse admitted to the country.

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 9) and **DISMISSES** Plaintiff's Petition for Writ of Mandamus and Complaint for Injunctive Relief (ECF No. 1).

**This is a final order that closes the case.**

**IT IS SO ORDERED.**

Dated: July 26, 2024            s/Brandy R. McMillion
                                               BRANDY R. MCMILLION
                                               U.S. District Judge